**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Denizot, <u>et al.</u>      }
                                  }
                                  }      Docket No. 91-6-03 Vtec
                                  }
                                  }

<u>Decision and Order on Appellee= s Motion for Summary Judgment</u>

Appellants Lee Buik Denizot, David and Janice Bartley, John and Regina Meigs, and Alan and Lynne Fletcher appeal from a decision of the Development Review Board (DRB) of the Town of Fairfax, approving Appellee Brian Burnor= s application for a five-lot subdivision. Appellants represent themselves; Appellee-Applicant Brian Burnor is represented by Joseph F. Cahill, Jr., Esq. Appellee-Applicant has moved for summary judgment.

The following facts are undisputed unless otherwise noted. Appellee-Applicant owns property located on the north side of Rood Mill Road, which runs east to west in this location. In an earlier four-lot subdivision he created three two-acre lots proposed for single-family residences (Lots 2 through 4 as shown on the present subdivision plan), and retained the large parcel of remaining land as Lot 1, with one house site.

The proposal in the present appeal is to further subdivide the 59.81-acre parcel retained in the previous subdivision into six parcels: five building lots in the two-acre to two-and-a-half-acre size range (denominated Lots 5 through 9 on the present subdivision plan) for single-family residences and the remaining land of approximately 48 acres (still denominated Lot 1) with one house site. The property also contains areas of ledge, wetlands, a stream, and lands with steep (over 25%) slopes unsuitable for building, most of which is located on Lot 1. All of the proposed land is located in the Agricultural and Forest Resources zoning district, with the Shoreland (flood plain) overlay zoning district affecting at least Lots 1, 6 and 8. All six of the house sites are located to the southwest of the stream on the property. Small portions of Lots 6 and 8 and a large portion of Lot 1 are located to the northeast of the stream. The Shoreland (flood plain) overlay zoning district[1] comprises the 100-year flood plain around the stream that runs through the property from northwest to southeast.

Appellants appealed the DRB grant of subdivision approval, and raised eight issues in their statement of questions.

Questions 1, 2, 3 and a portion of Question 7 relate to whether the DRB is precluded from considering a subdivision application if the applicant is not in compliance with conditions of previous subdivision approvals or with town bylaws. These questions do not challenge whether similar conditions or additional conditions, <u>e.g.</u> for landscaping and screening, would be necessary to meet the subdivision criteria for the present application. Although facts may be in dispute as to whether or to what extent Appellee-Applicant may have failed to comply with conditions of previous subdivision permits (Questions 1 and 3 and a portion of Question 7) or with requirements of the Zoning Bylaws regarding excavation (Question 2), none of those disputed facts are material to this legal issue. That is, if the Subdivision Regulations and Zoning Bylaws do not specifically authorize the DRB to hold off on consideration of subdivision approval due to lack of compliance with earlier permits, we need not reach the factual question of whether this applicant was or was not out of compliance[2] with any earlier permits or with unrelated requirements of the bylaws.

Neither party has pointed to anything in the Subdivision Regulations or Zoning Bylaws that could be read to authorize the DRB to hold off on consideration of subdivision approval due to lack of compliance with earlier permits[3] or with unrelated requirements of the bylaws. Rather, the only type of permits which the Zoning Regulations authorize to be withheld from issuance for that reason are building permits. See ' 2.2(B) of the Zoning Bylaws. Building permits are issued by the Zoning Administrator for construction or change in use to a building; no construction or change in use to a building is proposed by the subdivision application before the DRB and now before the Court. Therefore, summary judgment must be granted to Appellee-Applicant on Questions 1, 2, 3 and that portion of Question 7 related to whether the DRB is precluded from considering a subdivision application if the applicant is not in compliance with conditions of previous subdivision approvals or with town bylaws.

Question 4 argues that even if all of the proposed lots are more than two acres in size, some of them do not meet the density requirement of two acres per unit, if the various easements for the septic systems and the subdivision roadway are subtracted as they are required to be under the definition of density in Appendix B. We note that density and lot size are treated somewhat differently in the ordinances. In this district, the minimum lot size is two acres, and the minimum density is one unit per two acres. If none of the land in a two-acre lot is subject to an easement, then that lot will also meet the density requirements. But if some of the land in a particular lot is subject to an easement, that area cannot be included in the lot area for calculation of density, except in PRDs or PUDs. At this time, this subdivision is not being proposed as a PRD or PUD. Thus, its lots containing easements must be analyzed as to whether they each exceed the minimum two acres enough to meet the density requirements. While Appellee-Applicant= s engineer counted all the undevelopable land in the subdivision, including those for easements, and deducted it from the total acreage to calculate if the subdivision as a whole met the two-acre-lot density requirements, that calculation is not provided for each lot under the definition of density in Appendix B. None of the information provided to the Court with the summary judgment motions allows the Court to determine whether, for example, the 2.504-acre Lot 7 meets the two-acre minimum if the septic easements for Lots 1, 6, and 8 and the roadway easement are deducted from it. Therefore, summary judgment must be denied on Question 4 as material facts are in dispute.

Question 5 claims that the ordinance does not allow septic systems to be located on a different lot than the lot served by the system. Neither party has pointed to anything in the Subdivision Regulations or Zoning Bylaws that requires a septic system to be located on the lot that it serves. Section 704(F)(1) of the Subdivision Regulations only requires that each lot be > appropriately sized= to provide satisfactory water supply and sewage disposal and to meet other requirements including > other standards set by these regulations.= If, due to the presence of ledge or high seasonal water table or any other limitation, an applicant wishes to design a subdivision so as to provide > satisfactory sewage disposal= on another lot, nothing in this section prevents it; as long as the necessary easements are obtained and the receiving lot meets all other standards set by the regulations. Similarly, none of the requirements in Appendix A regarding well protection (7.0) and sewage systems (8.0) precludes the use of off-site septic systems.

Question 5 also claims that the areas on Lot 7 on which the new off-lot systems are proposed to be located are seasonally inundated and therefore are not suitable for septic systems. Appellee-Applicant= s engineer= s affidavit filed with the motion for summary judgment states that all the sites for location of septic areas meet the current town and state requirements A with respect to location of septic systems.@ That affidavit has not been countered by any information that calls into question the fact that the septic sites proposed for this subdivision meet all the current state and town requirements for their location[4]. Therefore, summary judgment must be granted to Appellee-Applicant on Question 5 of the Statement of Questions.

Question 6 claims that the subdivision is proposed for a parcel of > productive agricultural land= and that it therefore fails to meet ' ' 703 and 704, the applicable sections of which are ' ' 703(A),

703(F), and 704(G). Appellee-Applicant does not argue on summary judgment that the property does not in fact contain productive agricultural land, but instead argues that ' 3.3(D) nevertheless allows single family homes as a permitted use in the district. As this proceeding is <u>de</u> <u>novo</u>, material facts are in dispute as to what sections of the property constitute productive agricultural land, and whether the proposal meets ' ' 703(A), 703(F), and 704(G), or whether under ' 704(G) the Court, sitting in place of the DRB, should require any different lot layout. In addition, by contrast to the issues in Questions 1, 2, 3, and the part of Question 7 discussed above, if a prior subdivision approval had required as a condition that all or part of the then-retained land be preserved for recreation, open space or agriculture, the DRB (and hence this Court) must examine the conditions of that prior approval to determine if this second subdivision proposal itself violates any conditions of earlier subdivision approvals that are applicable to it, or whether this proposal must also seek amendment of any earlier approval. Therefore, summary judgment must be denied on Question 6 as material facts are in dispute.

Appellee-Applicant is correct that the question of whether a criterion is met is unrelated to whether the DRB has or has not received a petition about it from any number of nearby residents. Therefore, we will disregard the element of Question 7 referring to a petition. The portion of Question 7 regarding > previous conditions not being met= has been addressed in connection with Questions 1, 2, and 3, above. The remaining issues in Question 7 are whether subdivision approval should be denied due to anticipated problems with > noise and vandalism.=

A standard governing noise is not found either in the Subdivision Regulations or in the required improvements and design standards criteria found in Appendix A, although the noise performance standards in ' 4.2(2) must be met for any uses ultimately conducted on the property. Thus, with respect to the standards for subdivision approval at issue in the present appeal, both noise and vandalism are only potentially relevant as evidence of the Town= s ability or inability to provide police services. (' 703(D) of the Subdivision Regulations regarding municipal services). Therefore, summary judgment must be denied on this portion of Question 7 as material facts are in dispute.

Question 8 suggests that Lot 5 is of an irregular shape as precluded by ' 704. Lot 5 is trapezoidal in shape. While one of its side lot lines may vary more than 15% from a 90-degree angle with the road at its southeast corner, see ' 704(D), Question 8 only addresses the purported > irregularity= of Lot 5. Section 704(B) addresses > irregular shapes;= it precludes lots designed with irregular shapes such as curves, jogs, doglegs, bowling alleys or lots that are > otherwise contorted in order to get around these regulations.= Lot 5 is trapezoidal in shape, but it is not irregular as that term is defined in ' 704(B). Therefore, summary judgment must be granted to Appellee-Applicant on Question 8.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant= s Motion for Summary Judgment is GRANTED as to Questions 1, 2, 3, 5 and 8, and as to Question 7 other than regarding governmental services; and is DENIED as to Questions 4, 6 and as to Question 7 regarding governmental services. Summary Judgment is GRANTED to Appellants as to the method of calculating lot density raised by Question 4, but material facts are in dispute as to whether any of the individual proposed lots is reduced below the required two-acre-per-unit density after the correct calculation is made. Accordingly, that aspect of Question 4, together with Question 6, and Question 7 regarding the Town= s ability or inability to provide police services (' 703(D)), remain for trial.

That trial is hereby set (see enclosed notice) for the afternoon of April 27, 2004, beginning at 1:00 p.m. We will hold a telephone conference on April 12, 2004 at 9:30 a.m. (see enclosed notice) to discuss preparations for and the limited scope of that hearing, including the return of any summary judgment documents for use at trial, and whether that date poses a conflict for any of the parties or their witnesses. At the merits hearing the parties should be prepared to make their arguments orally so that the Court can rule on the record. If Appellee-Applicant wishes instead to

amend the application to propose any substantial difference in lot configuration, or to propose a PRD, he should be prepared to so state at the conference.

Done at Barre, Vermont, this 2nd day of April, 2004.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

1.     The Shoreland district is defined in the Zoning Bylaws (§3.3(F)) by the 100-year flood plains as shown on the latest Fairfax Flood Insurance Rate Map, which has not been provided by either party. The Zoning Map in the Bylaws is at too small a scale to show the width of the Shoreland district surrounding the stream on the subject property but in the area of this project it appears to be almost as narrow as the stream itself. The subdivision plan also does not show the width of that district surrounding the stream, but it does leave a 75-foot-wide area undeveloped to the southwest of the stream. None of the property to the northeast of the stream is proposed for development.

2.     Anyone who believes that enforcement action should be taken by a town is free to request that action of the Zoning Administrator and then to appeal to the DRB if the request is denied, or to seek enforcement of a DRB order directly under 24 V.S.A. §4470(c), or to seek town action under its health authority in Title 18.

3.     Moreover, with respect to the location of the house on Lot 1, an applicant is entitled to apply for a new permit or a permit amendment changing the location of a feature approved in an earlier permit or approval. It is then for the DRB in the new proceeding to determine whether the new proposed location may be approved, on its own merits.

4.     Appellant Denizot's affidavit states only that she has "been bothered by septic odor coming from the land behind where I live in the area where [Appellee-Applicant] Mr. Burnor currently has septic systems," and goes on regarding the Town's failure to take any enforcement action regarding a septic system to the east of her residence. This complaint appears to relate to the septic systems serving existing houses already built, rather than to the systems proposed in this application. Any prior approval not appealed may not be challenged, directly or indirectly, in this appeal, see 24 V.S.A. §4470(d); and, regarding enforcement of such approvals, see footnote 2 above.